Thank you. The next case this morning for oral argument is 23-1861 Leit v. Aspirus Medical Group. Mr. Bibb, whenever you're ready. Thank you. May it please the Court, Aaron Bibb on behalf of Appellant Michael Leit. In 2019, Dr. Michael Leit left a lucrative practice in New York to work for the FLE Aspirus Medical Group in rural Wisconsin. When Aspirus hired Dr. Leit, he was aware that he had two serious health conditions, one of which had required heart surgery shortly before he began working for Aspirus. The parties entered into a guaranteed three-year contract under which Aspirus could terminate Dr. Leit only under a limited set of specified conditions. The condition at issue in this appeal is the contract's disability provision, which allowed Aspirus to terminate Dr. Leit upon the determination of being disabled, not upon becoming disabled, but upon the determination of being disabled. The provision then stated, disabled and the procedures for being determined disabled shall be defined in the disability insurance policy provided by Aspirus. Mr. Bibb, can I ask you a question? I hate to cut in so soon, but time is so short here. The way I sort of interpret your argument, I want to make sure that I'm clear, is to the extent that there's a gap in the contract that was, I think, drafted by Aspirus, that we should consider the party's intent and fill the gap with the party's intent when they entered into the contract. And the party's intent here, at least the doctor's intent, would not have been to allow Aspirus to unilaterally determine his disability without any procedure whatsoever. Actually, Your Honor, I would say that the language of the contract requires determination of disability under the procedures of the Lincoln disability, long-term disability insurance policy. But there's a gap there, because what happened here, I think, is maybe unanticipated, where the doctor says, look, we don't need to determine disability because he's not eligible, he didn't satisfy the weighting criteria, so nobody's going to determine disability. So, what happens in the event nobody determines disability? Well, then we're left with the result that's required by the Ashker case that we cited in our brief. If the contract says we have a guaranteed term of employment that could be terminated only under a certain set of specified conditions, here the condition is being determined disabled under the disability procedures. Right, but there's nowhere that it said that Aspirus can't make that determination. So, the logic of Ashker is that if it's not specified in the contract, and then it says termination only for cause and then certain specified reasons, if those conditions aren't met, there's no room for termination. So, the contract doesn't say he can be terminated if he becomes disabled. It says only that he can be terminated if he's determined disabled under those procedures. And then, of course, with respect to, I think, the damage argument, but I don't want to get too much into the weeds on this, the issue here is if he's not terminated under the terms of the contract, he can potentially come back to work when his disability is, if his disability is corrected, he can work, or he's subject to other things under the employment contract such as benefits like health insurance and things like that that he doesn't get if he's terminated. Is that correct? Okay. Thank you. That's correct, Judge. And we didn't get into the question of lost salary at the district court because that didn't come up in summary judgment. Right. Yeah. And the salary thing, I understand if he's not working under the way the contract is set out, it's hard to get paid when you're not working. He's not going to get any units and things like that, but he does, there are other benefits to which he's entitled in the contract that he would presumably get if he was still employed even if he wasn't working. That's correct, Judge. We would say that the damages include that at a minimum. Okay. And those, whatever damages you're seeking, that would terminate September 30th of 2022 under the terms of the agreement, that it would automatically expire unless they both agree to renew it then, correct? That's correct, Judge. Okay. So, Mr. Bibby, getting back to a question that Judge Kirsch asked, it seems kind of an odd fit, the language, the procedures for being determined disabled and the claims procedures that are set forth in the long-term disability insurance, not only for the reasons that Judge Kirsch mentioned, which is that a claim could be denied for reasons other than whether or not a person is disabled, but also the claims procedures anticipates that it would be the insured, that is, the doctor who first initiates that. But what if the doctor doesn't want to? What if the doctor is disabled and says, you know, I don't want to file a claim for whatever reason? The procedures don't provide any way for the employer to initiate that process. And so what happens in that scenario? Judge, I would say that if he just refused to report to work, perhaps there's material breach of the contract. No, no. But let's say he continues to come to work, but the hospital is, hypothetically, the hospital has grave concerns with regard to whether or not he can perform his work because of his disabilities, assuming, hypothetically, that it's disabled, but the doctor doesn't think so. The doctor thinks that he or she, whoever it might be, is not disabled, and so doesn't bother to start the claims process. But the hospital has grave concerns. How is the hospital to get a determination of disability from the insurer in that context? Because it has no right to submit a claim on the doctor's behalf, right? I agree, Judge. And I think, in that case, for the disability provision to take effect, we do have to start with the language. So then the hospital's stuck? The hospital can't do anything? I don't believe so, because I believe, in that case, there could be recourse in other contracts, such as, is he failing to live up to his expectations under the contract, failing to perform duties satisfactorily? But there's no way for the hospital, then, under my scenario, to proceed under 6.1.3? Not under the language that they wrote, no, Judge. Yeah, they may not be able to terminate him, is your argument, but he may... You know, I look at this case. I thought about the same way that Judge Lee thought about it. The case gets clouded because he's disabled, okay? What if he had a tremor? You know, and he said, I can perform the big surgeries. I can perform patient visits, but I can't reconnect nerves and things like that because of this tremor, right? I can do the hip surgeries and the battle-axe-type stuff, but not the fine motor stuff. He has a tremor. Then what happens? And I think your position is that he can't be... and then fire him under the terms of the contract. They may permit him to not see patients, but they may still owe 401K contributions, and they may still owe health insurance benefits. But that's the bargain that they cut, at least for those three years. Correct, Judge. And in that situation, perhaps there are other core duties that could still be performed. Dr. Light's contract contemplated other duties that perhaps could have been performed here, such as serving as a medical director, more administrative duties. We could have explored those options. And based upon the way he's paid, his salary may have been dramatically reduced because he's not earning the units. I don't know if they're called RVUs or what they're called in this period. Every hospital has, it seems like, a little different nuanced term for them, but it's basically the units that you meet performing your services as a physician. And we'd be looking at that as a damages question, a back question for the jury. It's not something we got into in briefing. Well, I'll reserve the remainder of my time for rebuttal. Okay.  Thank you. Mr. Leibniz? Thank you, Your Honors. Good morning. May it please the Court. My name is Chad Leibniz, and I represent the appellant in this matter, or the appellee, excuse me, Aspyrus Medical Group. The issues in this case are very simple. Was Dr. Light prevented from engaging and undertaking his responsibilities as an orthopedic surgeon? If the answer to this question is yes, Aspyrus was fully entitled to terminate him under the employment contract. Where does it say that? If you look at the disability provision within that, it's specifically enumerated within the disability section of that employment agreement. What procedures or process would be due to the doctor to challenge that determination? You know, in other words, what concerns me here is if you look at the provision of the contract, disabled and the procedures for being determined disabled, the procedures for being determined disabled, at least the way I read the insurance policy, says this is what the insurer is going to do in order to make the determination. Is your position that the employer steps into the shoes of the insurer and can make the unilateral determination, and that was the deal that the doctor struck when he signed the contract? In other words, the doctor agreed that my employer can unilaterally determine that I'm disabled and fire me under the terms of the disability contract. I think it would be an inaccurate description to say step in the shoes of the insurance company. So, where you begin with respect to the process and procedures is you start with the definition of disability. So, the definition of disability is boiled down to can Dr. Light, the appellate, undertake his obligations and duties as an orthopedic surgeon? At that point in time, you look to what is the information that supports that? In this instance, it's true. Dr. Light had no obligation to provide information on his medical situation. But beginning 10 months after he started employment with Aspiris, he made a short-term disability request and verified himself as well as his treating physician that he could not perform the duties and obligations as that orthopedic surgeon. This happened time and time again through the fall and winter of 2020 into 2021. In addition, he submitted two requests or claims to a private long-term disability insurers. They both determined that he was disabled. In fact, I think there's an affidavit of February of 2021. There was some question on whether Dr. Light was engaging in orthopedic services at his home state of New York. He assured through an affidavit and this is document 30 at the district court level. I don't think there's any question here that he's disabled, but the question is who determines that and what are the processes used for determining that? It sounds to me like your argument is in this case, that's unimportant because it's not a tremor. It's a major disability and he can't perform the services. Even he says he can't perform the services. We don't have to look at, when we look at the terms, disabled and the procedures for being determined disabled shall be defined. We should just look at disabled shall be defined in the long-term disability policy and ignore the procedures here because we don't need to look at them. I think you still look at the procedures and it should be taken on a case-by-case basis. In this case, you start with the definition. Then you have information that's provided by Dr. Lee himself. The process and procedures is where is this other information coming from? In this case, it's clear. You have the information coming directly from Dr. Light. Now, Dr. Light, he'll have the argument that there's this false requirement that he received benefits under the disability contractor policy before he's terminated because of that disability. That's nowhere in the employment agreement. It's nowhere in the long-term disability policy. Frankly, it's just, it's made up out of whole cloth with respect to I need to receive benefits before I'm terminated based on the disability. In fact, that rationale would make the language, the ability for us to terminate Dr. Lee an impossibility. Well, no, no. I don't think that's right. I mean, it's the bargain they struck. I think that the doctor's argument is, look, I may be able to be terminated for all sorts of reasons, but I have a three-year contract here, not a five-year, not a 10-year, not a 20-year contract. It's three years. For three years, the only way that I can be fired for a disability is if the insurer determines that I have a disability. And if the insurer doesn't make that determination, certainly I'm not entitled to all of the benefits of the bargain, including the pay and things like that, but I am entitled to health insurance. And by the way, if I'm able to recover from my disability, I'm able to come back and work at least during that three-year period. In other words, there's this safety net that exists. If Asperis thinks that I'm hurt or injured or disabled, however you want to say it, they can't just unilaterally terminate me. And Asperis's argument is, no, we can, I guess, so long as the disability is clear and obvious. If the doctor admits the disability, then the procedures used for determining disability don't matter. It's time and time and time again in representation that I can't undertake my abilities as an orthopedic surgeon under the contract. So with the overwhelming evidence that there's a disability, the bargain was, we don't have to be tied to this substantial financial obligation if you can't undertake your duties as an orthopedic surgeon. Why not proceed then under 1.3.1, right? Why not say, you know, you are obligated to perform these services. You can't perform them, and so therefore we deem it basically an anticipatory material breach, and so we're done. I think the evidence and the representations were so overwhelming that this was a disability and he couldn't perform his duties as an orthopedic surgeon. The other provision of the contract was not needed. So is it your argument that because he's the one who admitted he was disabled, he had support for it from his doctor, that these other procedures from the insurance company aren't necessary? Exactly. And is there anything in the language of the contract that would support that? The employment agreement is between an employer and an employee. There's no obligation to bring in a long-term disability insurer to make those decisions that are very sensitive to that employer-employment relationship. If you were to put employment decisions in the hands of a long-term disability insurer, it would take forever, and there's all these gaps in there about coverage. I think we made the example of if Dr. Light had engaged in intentional harm to himself and had been disabled because of that, that's not a covered event under the insurance policy, but undoubtedly we would be able to terminate him for that disability under the policy. Well, only – that's true, but only – I mean, the way – this is one argument. Only if he's determined to be disabled. So there are many ways the insurance company can determine he's disabled and then determine that he's not entitled to claims. There's this little gap here where the insurance company says it's not important to whether or not he's disabled. We don't need to make that determination because he hasn't waited the waiting period. And Aspiris may or may not have cut a bad deal, but I'm not sure that it's our role to save Aspiris from the deal that it cut with the doctor. And by the way, the doctor may say, no, no, no, Aspiris cut a very good deal because there's no way I would have entered into this contract being an orthopedic surgeon if my employer could unilaterally determine disability. That means if I have a slight tremor, the hospital can unilaterally determine with no process whatsoever, you're disabled and fired. And boy, that – I don't know that there are many surgeons that would agree to that. Maybe there are, but I'm not sure. Determination, there is no tied actor to determination. A determination is the overwhelming objective information and it is ultimately determined. Here, Dr. Light is part of that decision. All the information is flowing from him as treating physician. He's part of that determination as well as the employer, Aspiris. I just, with the ten seconds remaining, I would just like to touch upon damages quickly. There's been nothing addressed at the district court level that there's additional damages other than that for salary. And I would cite to document 23, light damages. May I just take a moment? Sure, go ahead and finish up your thought. Document 23 at the district court level. It's described by the appellant as this calculation is easily calculated. It takes the salary, the days remaining under the employment agreement, and that's where we get the damages. There's no discussion, no evidence shared on any level with these other benefits. It was addressed at the district court level and has been waived because there has been no mention or proof of other damages. Thank you. I appreciate your time today. Thank you. Mr. Bidd, rebuttal, please. Thank you, Your Honors. I'll start with that issue of damages, which is to state that we withdrew our motion for partial summary judgment on damages after we decided that it was more properly a fact question for the jury. And I'll just leave it at that because I believe that's explained in our briefing. What I think is notable is the absence of any discussion of the meaning of the procedures for being determined disabled in Aspyrus's argument. What I heard was that that should be determined on a case-by-case basis, but there's nothing in the agreement itself that talks about a case-by-case basis, nothing in the agreement that talks about Aspyrus making that determination. Rather, it says the determination is to be made under the procedures in the long-term disability insurance policy. Now, Aspyrus says this leads to an unreasonable result, and the district court agreed. But the problem is we started, the district court and Aspyrus started at the result and worked backwards. Contract law, of course, we start with the language of the contract. If that language is clear, we end with the language of the contract. And that language is clear here. We don't get into the question of reasonable or unreasonable results if the language is clear. And as Judge Kirsch alluded to, the result here is actually not unreasonable. I'm not sure the language is clear. I'm just not sure I can buy that. But it may not need to be for you to prevail, okay? I appreciate that, Your Honor, but I would say that neither Aspyrus nor the district court has offered an alternative meaning for the phrase the procedures for being determined disabled. And the only one that I can find is the one that we've offered, which is that the long-term disability insurer needs to make that determination. Even if you prevail here on appeal, isn't it a jury question as to whether or not the procedures in the long-term disability policy were followed in determining disability here? I believe if we're correct on the interpretation of that language, there would not be a jury question because there's no evidence that Lincoln determined him disabled. They just simply didn't address the question. But there's no requirement. I guess the big question here is whether the contract requires the long-term disability insurer to determine disability or whether the contract allows Aspyrus to determine disability so long as they follow the same procedures that are set forth in the long-term disability contract. Perhaps in the abstract, but those procedures, as we understand them, would include submitting proof of claim, the insurer evaluating proof of claim. And, of course, the long-term disability insurer says only Lincoln can make this determination. So I understand. Thank you. There's nothing else? No. Thank you. Thank you, judges. Thanks to both counsel. The court will take the case under advisement.